CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 2 6 2005
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRENT M. JARRELLS,<br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | )<br>)<br>)<br>)   Case No. 7:04-CV-00411<br>)<br>)  By:  Michael F. Urbanski<br>)        United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Brent M. Jarrells ("Jarrells") brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.

The thrust of plaintiff's argument is that the Commissioner disregarded the opinion of plaintiff's treating physician that plaintiff required certain job limitations which would render him unable to work. The Commissioner responds by stating that the treating physician's opinion that plaintiff's back pain was disabling was not supported by objective evidence. Additionally, plaintiff contends that the administrative law judge ("ALJ") erred by substituting his judgment for that of a medical professional and should have instead appointed a consultative evaluator to inquire further into plaintiff's mental condition. Plaintiff also objects to the ALJ's consideration of his daily activities and seeks to submit evidence of a psychological report dated more than eighteen months after the ALJ initially decided this case.

Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as the Commissioner's decision is supported by substantial evidence and proper under the law.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan; 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

At the time of the ALJ's decision, plaintiff was forty-two years of age, had limited education, and past work experience as a landscaper, laborer, and dryer operator. (Transcript, hereinafter "R.", at 67) On November 26, 2001, plaintiff filed applications for DIB and SSI. (R. 52-54, 224-28) Both claims were denied initially and on reconsideration, and a request for a hearing was filed. (R. 30-32, 37-40. 234-35) Following a hearing at which plaintiff testified, on March 13, 2003, an ALJ issued a decision denying disability. (R. 14-25) Following the Appeals Council's denial of plaintiff's request for review, plaintiff filed this suit seeking review of the Agency's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

2

Plaintiff alleges disability beginning on November 15, 2001 due to low back pain arising out of an injury occurring approximately twenty years before. (R. 52, 66, 137) The record, however, documents very little medical treatment during the relevant period of November 15, 2001, the alleged onset date, and March 13, 2003, the date of the ALJ's decision.

Plaintiff was first seen by Linda Cheek, M.D., in October, 2000, and first complained of back pain. (R. 120-21, 175-84) Most of the office notes from Dr. Cheek appear to have been generated by a family nurse practitioner ("FNP"), Dennis Cotellese. An MRI taken on April 19, 2001 showed degenerative disc disease at L4-5 with bulging disc, but no focal herniation or spinal stenosis. (R. 130) On physical examination, plaintiff had pain and spasm with palpation of the lumbar area during several 2001 visits. (R. 120, 121, 122) FNP Cotellese referred plaintiff to a chiropractor for treatment in November, 2001. (R. 134) The chiropractor completed an abbreviated Disability Certificate on November 28, 2001 indicating that Jarrells was totally incapacitated. (R. 136) Later, on March 5, 2002, the chiropractor reported that treatments were effective, at least temporarily, but cautioned that plaintiff may have problems in the future. (R. 135)

Consistently, plaintiff reported to FNP Cotellese in December 2001 that, although he had continued back pain, his chiropractic treatment "helped a great deal." (R. 120) Plaintiff also stated that he now was able to stand up straight and did not limp. (R. 120) Plaintiff's gait and station were improved. (R. 120) In February 2002, plaintiff's back pain remained unchanged. (R. 184) At the next visit in April 2002, plaintiff reported that his back pain was somewhat controlled through the use of Lortab medication. (R. 183) In May and July 2002, plaintiff

3

complained of worsening back pain, but the records do not document objective medical findings to support his claims of increased pain. (R. 181-82)

Plaintiff also claims disability due to nervousness. (R. 248) While the record demonstrates a history of psychiatric hospitalizations and outpatient treatment, all of this treatment predated the alleged onset. (R. 112-19) In this regard, the most recent treatment records available to the ALJ, from Hal Gillespie, M.D. in January, 2001, indicate that plaintiff was working regularly, doing well overall, with good concentration. (R. 117) Additionally, plaintiff was reportedly staying off of alcohol and his overall mental status was described as stable, with fairly good mood and affect. (R. 117) Following his visit to Dr. Gillespie in January 2001, plaintiff complained of depression to FNP Cotellese only sporadically. (R. 121, 182) Rather than suggest any mental impairment, FNP Cotellese's examination notes consistently reflect that plaintiff's mental status was normal and that no depression, anxiety, or agitation was noted. (R. 120-21, 180-84)

On June 12, 2004, Edward Hunter, M.D., a Virginia Department of Rehabilitative Services physician, performed a consultative examination of plaintiff. (R. 137-43) On physical examination, Dr. Hunter notes that plaintiff's gait was a little antalgic secondary to low back discomfort, but he did not use an assistive device. (R. 137) Plaintiff's reflexes were two plus bilaterally, strength was three to four/five on the left and five/five on the right, and sensation was intact. (R. 137) Dr. Hunter opined that plaintiff would experience some limitations in his ability to perform extended periods of creeping, crawling, climbing, stooping, bending or lifting, carrying or handling heavier objects, or sitting, standing, or walking for long periods and distances. (R. 140) Regarding mental capacity, Dr. Hunter notes that plaintiff had no limitations

4

in his capacity for understanding, memory, sustained concentration and persistence, social interaction or adaptation. (R. 140)

State agency physicians completed residual functional capacity ("RFC") assessments in February and July 2002. (R. 144-56) After reviewing the evidence of record, the state agency physicians opined that plaintiff had the residual functional capacity for light exertional work. (R. 144-52) The physicians also opined that plaintiff's affective disorder and anxiety-related disorder was not a significant to moderate limitation in his ability to perform mental activities. (R. 153-71)

On December 13, 2002, Dr. Cheek completed a physical residual functional capacity questionnaire. (R. 176-79) On this form, Dr. Cheek reported that plaintiff had consistent pain averaging eight to nine/ten on medication, precipitated by activities of walking, sitting, and alleviated after lying down for five to ten minutes. (R. 176) Dr. Cheek opined that plaintiff could occasionally lift ten pounds, sit and stand/walk less than two hours, total, or ten minutes at a time; he must walk around every thirty minutes for ten minutes at a time; and needs to be able to shift positions from sitting to standing/walking at will; and requires three to four fifteen-minute breaks during the workday. (R. 177-78) Plaintiff had no limitation on reaching, handling, and fingering, and stated that plaintiff could crouch five percent of the time and never stoop. (R. 178) The RFC form completed by Dr. Cheek indicated that while plaintiff experienced depression and anxiety, no emotional factors contributed to the severity of plaintiff's symptoms and functional limitations. (R. 176)

At the administrative hearing, the ALJ asked a vocational expert ("VE") to consider an individual of plaintiff's age, education, and work history. (R. 266) The ALJ asked the VE

whether work existed in the national economy for such an individual with the RFC for light work activity that allows him to sit and stand at will. (R. 266) Additionally, the hypothetical individual has additional nonexertional limitations stemming from his reactive depression and pain that precluded more than simple, repetitive tasks. (R. 268-69) The VE testified that such an individual could perform the jobs of office/clerical worker, ticket collector, telephone solicitor, information clerk, file clerk, cashier, office machine operator, parking lot attendant, and watch guard, of which thousands of jobs exist in the national economy. (R. 268-69)

## ANALYSIS

### A. The ALJ Acted Properly in Not According the Opinion of Dr. Cheek Controlling Weight

Plaintiff's first contention is that the ALJ erred in not according the opinion of Dr. Cheek controlling weight, particularly as concerns plaintiff's physical status. Plaintiff contends that when the limitations included in Dr. Cheek's opinion were placed before the VE in the form of a hypothetical question, the VE responded that there would be no jobs that a person in plaintiff's position could perform. (R. 272-73) At the hearing, the VE stated that if plaintiff's testimony as to his complaints were accepted as being generally credible, the jobs cited by the VE would be eliminated. (R. 270)

Although 20 C.F.R. § 404.1527 dictates that the opinions of a treating physician are generally entitled to more weight than those of a non-treating physician, the regulations do not require the ALJ to accept such opinions in every situation. For instance, the ALJ is not required to accept the opinions of a treating physician when the physician opines on an issue reserved for the Commissioner, see 20 C.F.R. § 404.1527(e), or when that opinion is inconsistent with other

evidence or is not well-supported. See 20 C.F.R. §§ 404.1527(d)(3), (d)(4); 416.927(d)(3), (d)(4). The regulations provide that a treating physician's opinion is entitled to controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2).

As noted by the ALJ, there are virtually no findings based on clinically-acceptable laboratory and diagnostic findings to support Dr. Cheek's opinion of total disability. (R. 22) An MRI showed degenerative disc disease at L4-5 with bulging disc, but no focal herniation or spinal stenosis. (R. 130) After one month of treatment by a chiropractor, plaintiff reported an improvement in his medical condition. (R. 120) Plaintiff was able to stand up straight and did not limp. (R. 120) Plaintiff's gait and station were improved. (R. 120) In February 2002, plaintiff's back pain remained unchanged; at his next visit in April 2002, plaintiff reported that his back pain was somewhat controlled with Lortab. (R. 183-4) It is clear from the case law that where conditions are treatable through the use of medication, parties cannot receive disability benefits. See Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984); Schmidt v. Barnhart, 2005 U.S. App. LEXIS 674 at **19-20 (7th Cir. Jan. 14, 2005); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") Although in May and July 2002 plaintiff complained of worsening back pain, the records do not document objective medical findings. (R. 181-82)

Dr. Cheek's December, 2002 opinion as to Jarrells' residual functional capacity is substantially more restrictive than called for by her own medical records and treatment. Dr.

7

Cheek's records indicate that she first saw Jarrells on October 4, 2000 complaining of viral symptoms, and first complained of lower back pain on April 9, 2001. At that time, Jarrells reported that he "hurt [his] back five weeks ago doing landscaping work with railroad ties." (R. 124) Following medication, Jarrells reported three days later that the "pain is better." (R. 123) An MRI taken a week later revealed moderate degenerative disc disease at the L4-5 level, without focal disc herniation or spinal stenosis. (R. 130) In May, 2001, Jarrells reported to Dr. Cheek's nurse practitioner, FNP Cotellese, that his back pain was worse in the morning and when he drove home from work and that he "does not notice it most of the time while at work." (R. 127) Jarrells was referred to Dr. Wilson for back pain, but the record does not indicate that he ever followed up on the appointment scheduled in June, 2001. (R. 127-28) The next reference to Jarrells' back in the medical records refers to his request for refills of some medication in September, 2001, at which time he reported that he "now has [a] landscaping business [and] has to use 3 Lortabs/day sometime." (R. 123)

Jarrells was seen by FNP Cotellese in November and December, 2001. On November 16, 2001, Jarrells reported that his back pain was worse for the last 1-2 weeks and he is "[c]ontinuing to work at landscaping in a 2 man company." (R. 121) On physical examination, FNP Cotellese noted "pain and spasm with palpation of lumbar area." (R. 121) While counsel for Jarrells emphasizes this finding in the chart notes, no suggestion appears in any treatment record authored by either Dr. Cheeks or FNP Cotellese that Jarrells stop working in his landscaping business. Rather, the notes reflect recognition by the medical personnel both of Jarrells' complaints of low back pain and his continued landscaping work. It is apparent that at the time of their treatment of Jarrells, neither Dr. Cheek nor FNP Cotellese felt that his condition

8

warranted a recommendation that he cease doing landscaping business, as nothing of the sort appears in their notes. At the same time, FNP Cotellese's chart notes consistently reflect normal mental status, including "no depression, anxiety or agitation." (R. 120-21, 184)

FNP Cotellese referred Jarrells to Dr. Deutsch, a chiropractor, whose treatment provided Jarrells with some measure of relief. FNP Cotellese's chart note of December 27, 2001 noted that Jarrells' lumbar back condition had "improved" with the chiropractic treatment. The notes provide that Jarrells reported "continued back pain. Went to chiropractor and states that helped a great deal. Now able to stand straight and does not limp." (R. 120) FNP Cotellese's note of February 2002 reflects that his "[b]ack pain remains unchanged from previous visits." (R. 184) Two months later, Jarrells reported that his continued back pain was "somewhat controlled by Lortab" and that he had increased function. (R. 183) In contrast, in May and July, 2002, Jarrells reported that his back pain was worse, (R. 181-82), but no such complaints were made during a September visit to have his blood pressure monitored. (R. 180) Further, an x-ray taken on June 11, 2002 revealed only "mild degenerative change of the lower lumbar spine." (R. 143)

It is difficult, if not impossible, to square this summary of the medical records with Dr. Cheek's residual functional capacity questionnaire filled out in December 13, 2002. None of the medical records suggest or recommend any limitation in Jarrells' activities, including any limitation on his landscaping activity, yet Jarrells argues that the RFC questionnaire establishes that he is unable to engage in any substantial gainful activity. As is apparent from careful examination of the medical records, the ALJ's skeptical consideration of Dr. Cheek's RFC questionnaire is fully justified. Under these circumstances, the ALJ's decision not to accord

9

controlling weight to Dr. Cheek's RFC assessment was amply supported in the record and consistent with applicable law.

Further, none of the other physicians who examined plaintiff could find a basis for his persistent complaints. (R. 22) Dr. Hunter, one of the consultative examiners, notes that plaintiff's gait was a little antalgic secondary to low-back discomfort, but that plaintiff did not use an assistive device. (R. 137) Plaintiff's reflexes were good and his sensation was intact. (R. 137) Based upon objective evidence, Dr. Hunter opined that plaintiff could experience some limitations in his ability to perform extended periods of creeping, crawling, climbing, stooping, bending or lifting, carrying or handling heavier objects, or sitting, standing, or walking for long periods or distances, but was not disabled. (R. 140) Moreover, after reviewing the evidence of record, the state agency physicians opined that plaintiff had the residual functional capacity for light exertional work. (R. 144-52) Because Dr. Cheek's assessment was unsupported by her own treatment notes and conflicted with that of Dr. Hunter's assessment – which was supported by objective evidence – the ALJ did not err in not according her opinion great weight. See 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff contends that as the ALJ has an obligation under 20 C.F.R. § 404.1512(e) to recontact treating physicians if the evidence received from them contains a conflict or ambiguity. This assertion is incorrect. That regulation only requires the Commissioner to recontact a treating physician when "the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled." The extensive medical records in this case clearly provide an adequate basis for the Commissioner's determination that Jarrells is not disabled. By this argument, Jarrells seeks to require the Commissioner to recontact medical sources where the

10

plaintiff offers a disability opinion which is not supported by the medical records. The Commissioner is not required to give treating medical sources a second opportunity to backfill an unsubstantiated disability opinion simply because the ALJ finds it to be unsupported. To do so, in effect, would be tantamount to shifting the burden to the Commissioner to prove non-disability. Here, the decision of the ALJ regarding plaintiff's physical capacity was supported by adequate and substantial medical evidence, including a full review of Dr. Cheek's own office records, and the ALJ was not required to recontact Dr. Cheek simply because her RFC opinion was not supported by those records.

**B.     The ALJ Acted Properly in Analyzing Plaintiff's Purported Mental Impairment**

Plaintiff contends that because the record reflects a diagnosis of a mental impairment (as demonstrated through plaintiff's prior medical history illustrating repeated psychiatric hospitalizations), the Commissioner erred in not referring plaintiff for a consultative examination. The regulations authorize, but do not mandate, that an ALJ obtain a consultative evaluation where treatment records are not available or are inconsistent. 20 C.F.R. §§ 404.1512(f), 416.1512(f).

In not requiring a consultative psychological examination, the ALJ determined that no clarification to the record was needed. This record contains virtually no evidence to suggest that plaintiff's psychological condition, either alone or in conjunction with his physical ailments, was disabling. The record indicates that plaintiff last was seen by a mental health provider in January 2001, ten months prior to his alleged onset date of disability. (R. 112-19). These notes of Dr. Gillespie indicate that plaintiff was working regularly, doing well overall, with good

11

concentration, varied appearance, and fairly good mood and affect. (R. 117) During the relevant period, plaintiff made only sporadic complaints of depression, (R. 121, 182), and mental status examinations regularly revealed no evidence of depression, anxiety, or agitation. (R. 120-21, 180-84) Even Dr. Cheek's RFC assessment denies that emotional factors contribute to the severity of Jarrells' symptoms and functional limitations. (R. 176) Further, based upon his examination, Dr. Hunter opined that plaintiff had no limitations in his capacity for understanding, memory, sustained concentration and persistence, social interaction or adaptation. (R. 140) Dr. Hunter's assessment was supported by the position of the state agency physicians who stated that plaintiff's affective disorder and anxiety-related disorder posed no significant limitation to moderate limitation in plaintiff's ability to perform mental activities. (R. 153-71)

Plaintiff particularly objects to one portion of the ALJ's opinion where the ALJ, in the context of a discussion of plaintiff's daily activities, comments on plaintiff's apparent lack of motivation. See (R. 21-22) ("[T]he conclusion is inescapable that the claimant is lacking in real motivation and has no incentive to work. Consequently, his complaints are not found to be fully persuasive and have been given little weight.") In this regard, Jarrells argues that the ALJ improperly substituted his judgment for that of the treating physician, and should have requested a consultative psychological examination. Jarrells' argument is wrong for two reasons. First, Jarrells takes this portion of the ALJ's decision out of context. That portion of the ALJ's opinion plainly concerns the credibility of his complaints and is not, as Jarrells suggests, a lay opinion as to his mental status. Second, the Commissioner acted appropriately in assessing the credibility of Jarrells' claim of total disability by considering his statement of daily activities. See 20 C.F.R. § 404.1529(c)(3); Social Security Ruling 96-7p. It is the duty of the ALJ, and not the courts, to

12

make findings of fact and credibility determinations and to resolve conflicts in the evidence. See, e.g., Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Given the evidence already present in the record, it is clear that there was substantial evidence upon which the ALJ could make a determination as to Jarrells' mental status, and as such, referring plaintiff for a consultative psychological examination was neither necessary nor appropriate. There is substantial support for the Commissioner's finding that plaintiff's mental condition was not disabling.

### C. The ALJ Acted Properly in Considering Plaintiff's Daily Activities in Reaching His Decision

Plaintiff also disputes the ALJ's consideration of his daily activities in denying his claim. While a claimant's ability to participate in limited household chores, in and of itself, does not prove that he has the ability to perform substantial gainful activity, see Peterman v. Chater, 956 F. Supp. 45, 54 (D. Mass. 1997), the ALJ is allowed to consider these activities among other factors. 20 C.F.R. § 404.1529(c)(3). Here, among other things, the ALJ noted that plaintiff took care of his eight year-old daughter, took short car rides, walked around his neighborhood, prepared occasional meals, kept his room clean, accompanied his girlfriend while she shopped, enjoyed drawing, woodburning, photography, reading, watching movies and television for ten to twelve hours a day, visiting friends and talking on the telephone, and other pleasurable and leisure activities. (R. 21) Plaintiff notes that the ALJ failed to examine the pace and exertion level at which these activities were performed, and instead determined only that plaintiff's complaints were not persuasive in light of his daily activities. (R. 21) Additionally, plaintiff contends that considering these activities was error in light of 20 C.F.R. § 404.1572 which states

13

that the Social Security Administration will not generally consider activities such as taking care of oneself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be "substantial gainful activity."

As considered by the ALJ, the issue is not whether these activities of themselves constitute substantial gainful activity. Rather, the issue is whether Jarrells' complaints of pain are credible in light of his daily activities. The ALJ appropriately considered Jarrells' daily activities in assessing his complaints of pain. See 20 C.F.R. § 404.1529(c); Social Security Ruling 96-7p. The ALJ did not substitute his judgment on a clinical point for that of a medical professional. Rather, the ALJ appropriately cataloged Jarrells' daily activities and evaluated his claim of total disability in their light. As such, based on the materials already present in the record, the court must grant defendant's motion for summary judgment as the ALJ's determination that plaintiff was capable of light work with limitations was supported by substantial evidence.

### D. The Additional Evidence Presented to the Appeal's Council after ALJ's Decision Is Irrelevant to the Time Period in Question.

Finally, plaintiff has moved to remand the case to the Commissioner for the consideration of new evidence. A district court may remand a social security case on the basis of newly discovered evidence, a "sentence six" remand, when plaintiff satisfies four prerequisites. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). First, the evidence must be "new." Borders, 777 F.2d at 955 (holding "new" evidence is "'relevant to the determination of disability at the time the application was first filed and not merely cumulative'")

14

(quoting Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983)). Second, it must be material. Id. Third, there must be good cause for the "failure to submit the evidence when the claim was before the Secretary." Id. Fourth, the claimant must make "'at least a general showing of the nature' of the new evidence." Id. (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

The new evidence presented in this case consists of a report of a psychological examination of plaintiff performed on November 23, 2004 by Cathye Griffin Betzel, Psy.D. Much of the report consists of information such as plaintiff's family history, living situation, psychological history and include summaries of some new psychological testing. This testing indicates that plaintiff is "experiencing moderate to severe distress characterized by worry, tension, agitation, and depressed mood." Id. at 5. Betzel diagnoses plaintiff as suffering from major depression and alcohol dependance and finds that he had a GAF of 50. Id.

Applying the Borders criteria, it is apparent that this material is new. This said, the material does not appear to be material because it does not relate to the time period at issue. For the purposes of this decision, the period at issue is between November 15, 2001, the alleged onset date of disability, and March 13, 2003, the date of the ALJ's decision. The report plaintiff seeks to have admitted as new evidence was generated more than eighteen months after the close of this period. As it does not relate to the time period at issue, there is no reasonable chance that it would change the outcome of the ALJ's decision. Plaintiff's claim for benefits in this case became closed as of the date of the ALJ's decision. See 42 U.S.C. § 423(b); 20 C.F.R. §§ 404.620; 416.330. Plaintiff has, however, made a showing of good cause for his failure to submit this evidence; as the testing had not yet occurred at the time of the ALJ's decision, there was no way for plaintiff to submit it. Because the evidence does not necessarily relate to the time

15

period at issue for this decision, the court finds that it would be improper to remand this new information to the Commissioner for its consideration. This material could, however, form the basis for a new application.

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is substantial evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See <u>Pierce v. Underwood</u>, 407 U.S. 552, 565 (1988); <u>King v. Califano</u>, 559 F.2d 597, 599 (4th Cir. 1979). As such, it is the recommendation of the undersigned that defendant's motion for summary judgment be granted.

## CONCLUSION

For the reasons outlined above, in an accompanying Order entered into this day, defendant's motion for summary judgment will be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to plaintiff and all counsel of record.

Enter this 26th day of April, 2005.

By: Michael F. Urbanski
United States Magistrate Judge

16